# Illinois Official Reports

## Appellate Court

---

**Guarantee Trust Life Insurance Co. v. Kribbs, 2016 IL App (1st) 160672**

---

| | |
|---|---|
| Appellate Court Caption | GUARANTEE TRUST LIFE INSURANCE COMPANY, Plaintiff-Appellant, v. ROBERT KRIBBS, KEITH LINDVIG, and LARRY GRAVES, Defendants (Keith Lindvig and Larry Graves, Defendants-Appellees). |
| District & No. | First District, First Division<br>Docket No. 1-16-0672 |
| Filed | December 29, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-2143 renumbered as 15-L-11262; the Hon. John C. Griffin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | McKnight, Kitzinger & Pravdic, LLC, of Chicago (Kevin Q. Butler, Cornelius E. McKnight, and Nathan P. Karlsgodt, of counsel), for appellant.<br><br>Katten & Temple LLP, of Chicago (Nancy A. Temple, Nathaniel H. Tone, and Gina M. Aiello, of counsel), for appellee Larry Graves.<br><br>Samuel A. Orticelli, of St. Charles, for appellee Keith Lindvig. |

JUSTICE MIKVA delivered the judgment of the court, with opinion. Justices Harris and Simon concurred in the judgment and the opinion.

**OPINION**

¶ 1    This is an appeal from an order dismissing claims against certain defendants as untimely. Plaintiff Guarantee Trust Life Insurance Company (Guarantee) entered into a reinsurance agreement with Somerset Reinsurance, Ltd. (Somerset), a company formed by an independent insurance producer for the sole purpose of reinsuring policies issued by Guarantee. Under the agreement, Guarantee forwarded premium payments to Somerset to hold in a custodial account for the payment of claims. Guarantee initially sued the founder of the reinsurance company, Robert Kribbs, alleging that he acted in concert with "an employee" inside Guarantee's organization both to secure the agreement and later to improperly obtain authorization for the release of funds from the account to Mr. Kribbs for his own use. Nearly six years after filing its initial complaint, while taking discovery depositions in the case, Guarantee discovered the identity of two of its own employees, Keith Lindvig and Larry Graves, who it claims participated in the scheme and sought to name them in the suit. Mr. Graves and Mr. Lindvig moved to dismiss the claims against them as untimely, and the circuit court granted their motion. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 2                                    BACKGROUND

¶ 3    Reinsurance is a contract of indemnity in which one insurer agrees to protect another insurer from a risk it has already assumed. *Vial v. Norwich Union Fire Insurance Society*, 257 Ill. 355, 358 (1913). The original policyholder is generally not a party to such an agreement. *In re Liquidations of Reserve Insurance Co.*, 122 Ill. 2d 555, 561 (1988). In this case, plaintiff Guarantee entered into a reinsurance agreement with Somerset, a reinsurance company formed by licensed insurance producer Robert Kribbs to reinsure credit life and disability policies issued by Guarantee.

¶ 4                            A. Guarantee's Initial Lawsuit

¶ 5    On December 12, 2006, Guarantee brought a five-count complaint against Mr. Kribbs for unjust enrichment, conversion, constructive fraud, concert of action, and civil conspiracy (the 2006 Complaint). Guarantee alleged that it entered into the reinsurance agreement with Somerset to reinsure policies sold by Mr. Kribbs and others, pursuant to which it agreed to deposit premiums paid on the policies into a custodial account controlled by Somerset and Mr. Kribbs. Guarantee further alleged that, "[w]ithout regard to the contractually and statutorily mandated reserve requirements applicable to both [Guarantee] and Somerset, [Mr. Kribbs] authorized and requested the release of the ceded premiums to be paid directly to [Mr. Kribbs]," leaving insufficient remaining funds to pay claims on the policies. As a result, Guarantee alleged that it was forced to indemnify policyholders, using its other reserves and premiums, for claims that should have been paid by Somerset from the custodial account.

¶ 6    Although Mr. Kribbs was the only individual defendant originally named in this case, Guarantee specifically alleged in count IV of the 2006 Complaint, entitled "Concert of

Action," that Mr. Kribbs could not have unilaterally withdrawn funds from the custodial account. According to count IV of the 2006 Complaint, "[t]he approval of an employee of Guarantee was required for Kribbs to allow the premium funds to be paid personally to Kribbs," and "[b]oth Kribbs and the employee of Guarantee knew that the release of funds directly to Kribbs constituted a breach of the employee's duty of loyalty to [Guarantee] and its duty to protect its policyholders."

¶ 7    On January 8, 2008, Mr. Kribbs disclosed in his responses to Guarantee's interrogatories the names of five individuals with knowledge of the losses allegedly suffered by Guarantee as a result of the transactions described in the 2006 Complaint, including Guarantee employees Larry Graves, Keith Lindvig, and Arthur Fess.

¶ 8    In the fall of 2012, nearly six years after originally filing the lawsuit, Guarantee took the discovery depositions of Mr. Kribbs, Mr. Fess, and Mr. Lindvig. Mr. Kribbs testified that he and Mr. Lindvig were both working for Guarantee—Mr. Kribbs as an insurance agent and Mr. Lindvig as a sales manager—when they were approached by vice president Larry Graves about forming Somerset. Mr. Kribbs stated that Mr. Graves explained how Mr. Kribbs could request "dividends" from the custodial account. During discovery, Mr. Kribbs produced copies of letters signed by both Mr. Graves and Guarantee's senior vice president of finance, Arthur Fess, instructing the bank to disburse funds from the custodial account directly to Mr. Kribbs.

¶ 9    Mr. Fess was also deposed and described how Mr. Graves prepared the letters and supporting documentation for Mr. Fess's signature.

¶ 10    Mr. Lindvig, who was at the time of his deposition the national sales manager for Guarantee's credit life division, testified that, at Mr. Graves's direction, it was he who initially approached Mr. Kribbs regarding forming a reinsurance company. Mr. Lindvig confirmed that, as the line-of-business manager, Mr. Graves was the one who reviewed quarterly statements to determine if sufficient excess was available in the custodial account to make a distribution. Mr. Lindvig also disclosed during his deposition that he had been receiving commissions from Mr. Kribbs "for many, many years back and forth."

¶ 11                          B. The Refiled Action

¶ 12    On October 2, 2012, the circuit court granted Guarantee's request for a voluntary dismissal of the 2006 Complaint and, on February 7, 2013, Guarantee refiled the action, this time naming both Mr. Kribbs and Mr. Lindvig as defendants and Mr. Graves as a respondent in discovery.

¶ 13    Guarantee filed a first amended complaint on July 31, 2013, in which it detailed Mr. Graves's involvement in the alleged scheme to wrongfully withdraw funds from the custodial account. On October 16, 2013, the circuit court granted Guarantee's motion to convert Mr. Graves from a respondent in discovery to a party defendant.

¶ 14    On January 6, 2014, Mr. Graves moved to dismiss the first amended complaint against him pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2012)), a motion that was later joined by Mr. Lindvig. The two argued that each of Guarantee's claims against them was barred by the five-year limitations period set out in section 13-205 of the Code (735 ILCS 5/13-205 (West 2006)), which they contended began to run when Guarantee first learned of its injury, something that could have happened no later than the filing of the 2006 Complaint.

¶ 15    In response, Guarantee argued that its awareness of one cause of its injury—wrongdoing by Mr. Kribbs—did not trigger the statute of limitations for claims based on other causes—*i.e.*, wrongdoing by Mr. Graves and Mr. Lindvig—that it did not and could not have discovered sooner. Guarantee additionally argued that its claims were tolled because it alleged that Mr. Graves and Mr. Lindvig were fiduciaries as a matter of law who not only failed to disclose their involvement in the scheme, as they were bound to do, but engaged in acts of fraudulent concealment preventing Guarantee from discovering that it had claims against them. Attached to the motion to dismiss was the affidavit of Guarantee's general counsel, Robert Baluk, who stated that, before the deposition of Mr. Lindvig, no one at Guarantee besides Mr. Graves and Mr. Lindvig "had any knowledge that the defendant Lindvig was involved or received money from defendant Kribbs in connection with the facts alleged in the complaint." According to Mr. Baluk, it was only "after reviewing the deposition transcript of Kribbs" that he "began suspecting that Larry Graves may also have been involved in and received financial benefit from the scheme described in the Complaint."

¶ 16    On March 27, 2014, the circuit court dismissed each of Guarantee's claims against Mr. Graves and Mr. Lindvig. The court concluded that Guarantee could have discovered that it had claims against these defendants within the statutory period for bringing those claims because Guarantee already knew that one of its own employees was involved in the alleged scheme, received information as to persons with knowledge who worked at Guarantee in early 2008 as a part of interrogatory responses provided by Mr. Kribbs, and chose to wait six years after filing its lawsuit to take any depositions. The court likewise rejected both the notion that Guarantee's conclusory allegations of fraudulent concealment were sufficient to toll the claims against Mr. Graves and Mr. Lindvig and Guarantee's argument that the two were fiduciaries who fraudulently concealed information simply by remaining silent. According to the court, there was "no factual support" for the existence of a fiduciary relationship, and the fiduciary exception did not apply.

¶ 17    Guarantee moved for reconsideration of the dismissal, arguing that Mr. Graves and Mr. Lindvig were fiduciaries as a matter of law because Mr. Graves was employed as a vice president of Guarantee and Mr. Lindvig was an insurance producer who was alleged to have misappropriated insurance premiums received from Guarantee. Guarantee insisted that its allegations of fraudulent concealment should be taken as true for purposes of the section 2-619 motion and that what it knew about the involvement of these two individuals during the limitations period was a question of fact for the jury.

¶ 18    On July 2, 2014, the circuit court denied the motion for reconsideration, finding that Guarantee had failed to present any new evidence, changes in the law, or errors in the court's application of the law. The court reiterated its view that, "in order for the statute of limitations to be extended under [the fraudulent concealment statute], the cause of action must have been concealed, not the identity of the tortfeasor."

¶ 19                                JURISDICTION

¶ 20    On February 10, 2016, after two unsuccessful attempts by Guarantee to bring this appeal, which failed because there was no proper order made pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), the following order was issued:

"IT IS HEREBY ORDERED that the Court finds that its March 27, 2014 order dismissing Keith Lindvig and Larry Graves is final and appealable and that there is no just cause for delaying either enforcement or appeal of the March 27, 2014 order."

This appeal was then timely filed on March 8, 2016.

¶ 21 Rule 304 states that the finding necessary to confer appellate jurisdiction over a final order disposing of some but not all of the claims in a case "may be made at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party." Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). Accordingly, the circuit court's order of February 10, 2016, properly conferred appellate jurisdiction over this matter.

¶ 22                                                    ANALYSIS

¶ 23 On appeal, Guarantee challenges the circuit court's March 27, 2014, order dismissing as time-barred the claims against Mr. Graves and Mr. Lindvig asserted in Guarantee's first amended complaint. With the exception of equitable arguments raised by Guarantee in the alternative, which are addressed later in this opinion, the parties agree that the relevant limitations period is the five-year period set out in section 13-205 of the Code for conversion and "all civil actions not otherwise provided for." 735 ILCS 5/13-205 (West 2006). The parties disagree as to when the limitations period began to run.

¶ 24 Mr. Graves and Mr. Lindvig contend that the statute of limitations was triggered no later than the filing of Guarantee's 2006 Complaint—in which Guarantee specifically alleged that the scheme could not have been carried out without the assistance of one of its own employees—and expired on December 13, 2011, more than a year before Guarantee took any legal action against Mr. Graves or Mr. Lindvig.

¶ 25 Guarantee, on the other hand, relies on case law applying the discovery rule and section 13-215 of the Code governing fraudulent concealment (735 ILCS 5/13-215 (West 2012)) to argue that its claims against Mr. Graves and Mr. Lindvig did not accrue until September 26, 2012, when it first learned that Mr. Kribbs was paying kickbacks to Mr. Lindvig, a revelation that Guarantee claims first caused it to become suspicious of Mr. Graves. Guarantee contends that it was not required to allege affirmative acts of fraudulent concealment or establish that it acted diligently in discovering its causes of action against Mr. Graves and Mr. Lindvig because these defendants were fiduciaries. Guarantee further argues that principles of equitable tolling and estoppel prevent application of the statute of limitations in this case.

¶ 26 In response, Mr. Graves and Mr. Lindvig contend that Guarantee's conclusory allegations were insufficient to establish fraudulent concealment. They further insist that Guarantee could not, as a matter of law, establish fraudulent concealment beyond the filing of its initial complaint on December 12, 2006, because that complaint demonstrated on its face that Guarantee knew that one or more of its own employees were involved in the alleged scheme. Mr. Graves and Mr. Lindvig further argue that Guarantee forfeited its arguments based on equitable principles by failing to raise them in the circuit court and that, even if it did not, those arguments lack merit.

¶ 27 A motion to dismiss filed pursuant to section 2-619 of the Code "admits the legal sufficiency of a plaintiff's complaint but raises defects, defenses, or other affirmative matters that appear on the complaint's face or that are established by external submissions acting to defeat the complaint's allegations." *Burton v. Airborne Express, Inc.*, 367 Ill. App. 3d 1026,

1029 (2006). One such defense is "[t]hat the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2012). Although "[t]he point at which [an] injured person becomes possessed of sufficient information concerning his injury and its cause to trigger the running of the limitations period is usually a question of fact," it becomes an issue of law where "the facts are undisputed and only one conclusion may be drawn from them." *Janetis v. Christensen*, 200 Ill. App. 3d 581, 586 (1990). A motion made pursuant to section 2-619 should be granted where "a plaintiff's claim can be defeated as a matter of law or on the basis of easily proven issues of fact." *Gadson v. Among Friends Adult Day Care, Inc.*, 2015 IL App (1st) 141967, ¶ 14. We review a circuit court's ruling on a section 2-619 motion *de novo*. *Freeman v. Williamson*, 383 Ill. App. 3d 933, 936 (2008).

¶ 28                                   A. The Discovery Rule

¶ 29        At common law, the discovery rule postpones the starting of the statute of limitations until the injured party knows or should have known of his injury. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414 (1981). The purpose of the rule is to "ameliorate the potentially harsh effect of a mechanical application of the statute of limitations that would result in it expiring before a plaintiff even knows of his cause of action." *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 52. Pursuant to the rule, "the event which triggers the running of the statutory period is n[either] the first knowledge the injured person has of his injury" nor "at the other extreme *** the acquisition of knowledge that one has a cause of action against another for an injury he has suffered." *Knox College*, 88 Ill. 2d at 415. Instead, "the statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Id.* (citing *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981)). As our supreme court has noted, "[a]t some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences." *Id.* at 416.

¶ 30        Guarantee overstates the discovery rule when it suggests that "the identity of the party who caused [the plaintiff's] injury is a prerequisite to the commencement of the running of the statute of limitations." (Internal quotation marks omitted.) This proposition has been repeatedly rejected by our courts. See, *e.g.*, *McCormick v. Uppuluri*, 250 Ill. App. 3d 386, 392 (1993) (rejecting the notion that the plaintiff's ignorance of a doctor's role in his injury tolled the running of the limitations period where the doctor was identified in the plaintiff's medical records and "[a]ny reasonable discovery attempts should have included ascertaining [the doctor']s involvement"); *Guebard v. Jabaay*, 65 Ill. App. 3d 255, 257-59 (1978) (holding the limitations period commenced when the plaintiff knew her injury was caused by an improperly performed operation, not when the plaintiff discovered the identity of the doctor who performed the operation).

¶ 31        Guarantee relies on a refinement of the discovery rule expressed in *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, which held that the statute of limitations is tolled when the alleged injury is the result of multiple causes but the plaintiff has only discovered one of the causes. In *Mitsias*, the plaintiff sued her doctor for injuries she suffered as a result of surgery that he performed on her shoulder. *Id.* ¶ 2. Several years later, the plaintiff's expert testified at his discovery deposition that new medical literature published after the plaintiff filed her case

suggested a link between the plaintiff's condition and the use of continuous infusion devices known as "pain pumps." *Id.* The plaintiff voluntarily dismissed the case and refiled it against both the doctor and the manufacturers of the pain pump used in her surgery. *Id.* ¶ 3. The circuit court dismissed the claims against the manufacturers as untimely, but the appellate court reversed. *Id.* ¶ 4. Noting that the discovery rule "is intended to encourage diligent investigation on the part of potential plaintiffs without foreclosing claims of which plaintiffs could not have been aware" (*id.* ¶ 21), the court held that a statute of limitations is tolled "when a plaintiff is aware that her injury might have been wrongfully caused by one source but is unaware that [it] might have been caused by another source and, in fact, could not be aware of that source because the causal link was as yet unknown to science" (*id.* ¶¶ 19, 43).

¶ 32   For the first time in its reply brief Guarantee also argues that, because it alleged Mr. Graves and Mr. Lindvig breached their fiduciary duties, it is "entitled to restitution from Graves and Lindvig independent of the injury caused by the misappropriation of funds," *i.e.*, forfeiture of the salaries these defendants received from Guarantee for the period during which they breached their fiduciary duties. Guarantee makes no mention of this remedy in its amended complaint. In any event, we disagree that the existence of such a remedy, which is based on the same breaches of fiduciary duty alleged in the 2006 Complaint, constitutes a separate and unknowable cause of Guarantee's injury like the one at issue in *Mitsias*.

¶ 33   Even in the absence of such a remedy, Guarantee maintains that *Mitsias* applies because the wrongful conduct of Mr. Graves and Mr. Lindvig in this case constituted a separate source of Guarantee's injuries, a source that Guarantee was not aware of when it filed its initial complaint against Mr. Kribbs. We assume that the identity of a new defendant—as opposed to the existence of a different causal mechanism as in *Mitsias*—could in some instances be considered a distinct "source" of a plaintiff's injury. However, the point the court underscored in *Mitsias* was that the plaintiff not only was not aware but *could not* have been aware of the second cause of her injury. *Id.* ¶ 19. Here, by contrast, Guarantee knew when it filed its 2006 Complaint that one of its own employees was involved in the wrongdoing that it alleged caused its injuries and was provided in 2008 with discovery responses disclosing a short list of potential witnesses that included Mr. Graves and Mr. Lindvig. Guarantee has provided no reason why it could not have discovered its claims against Mr. Graves and Mr. Lindvig sooner through "reasonable diligence." *Id.* ¶ 43. Thus, even assuming that *Mitsias* applies to situations involving undiscoverable defendants as well as to undiscoverable causal mechanisms, the holding in *Mitsias* is of no assistance to Guarantee in this case.

¶ 34                              B. Fraudulent Concealment

¶ 35   Guarantee next argues that, pursuant to section 13-215 of the Code (735 ILCS 5/13-215 (West 2012)), its claims against Mr. Graves and Mr. Lindvig are tolled by fraudulent concealment. That section applies if "a plaintiff pleads and proves that fraud prevented discovery of the cause of action." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 76 (2006). Mr. Graves and Mr. Lindvig note that "Illinois courts have consistently interpreted section 13-215 to apply only to fraudulent concealment of causes of action" and not to the identity of a defendant. *Levine v. EBI, LLC*, 2013 IL App (1st) 121049, ¶ 21; see also *Pratt v. Sears Roebuck & Co.*, 71 Ill. App. 3d 825, 830 (1979) (noting that the predecessor section "applie[d] to fraudulent concealment of causes of action; it [did] not apply to fraudulent concealment of the identity of tort-feasors"); *Guebard*, 65 Ill. App. 3d at 260 (" '[u]nder the Limitations Act, the only

concealment which postpones the running of the statute of limitations is fraudulent concealment by the defendant of the cause of action' "; " '[c]oncealment of the identity of a party liable is not deemed the same' " (quoting 25 Ill. L. and Prac. *Limitations* § 92 (1956))). Guarantee would apparently have us create an exception to this rule, perhaps by reading *Mitsias* in conjunction with section 13-215. However, we need not entertain this suggestion because Guarantee failed to adequately allege even that Mr. Graves's and Mr. Lindvig's identities, much less its claims against them, were fraudulently concealed from Guarantee.

¶ 36    Generally, affirmative acts of fraud must be alleged to support allegations of fraudulent concealment. *Hagney v. Lopeman*, 147 Ill. 2d 458, 462 (1992). Here, Guarantee alleged in its most recent complaint that "[Mr. Lindvig] and upon information and belief [Mr. Graves], provided false information to [Guarantee]'s senior management and accountants to facilitate the release of the monies" from the custodial account and "assured [Guarantee]'s management that the transfers of monies directly to [Mr. Kribbs] were appropriate and that the distributions would not jeopardize Somerset's ability to reinsure claims." Guarantee further alleged that it "was prevented from learning of the actions of [Mr. Kribbs], [Mr. Lindvig] and [Mr. Graves] because [Mr. Kribbs], [Mr. Lindvig] and upon information and belief [Mr. Graves], falsified and destroyed documentation and repeatedly assured [Guarantee] that their actions were proper." These allegations are unsupported by details regarding any specific false statements made by defendants or examples of documents that were falsified or destroyed. Lacking factual support, such conclusory statements are not taken as true in connection with a section 2-619 motion to dismiss. *Buckner v. O'Brien*, 287 Ill. App. 3d 173, 176 (1997).

¶ 37    Guarantee asserts, however, that it need not allege specific acts of fraud where it has established that Mr. Graves and Mr. Lindvig were fiduciaries who owed Guarantee a duty of candor. Our supreme court has held that a fiduciary enjoying the trust and confidence of another is under a duty to reveal material facts to his principal "and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act." *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 561-62 (1980). A fiduciary relationship may arise as a matter of fact, "where one party reposes special trust and confidence *** and thereby gains superiority and influence over the subservient party." (Internal quotation marks omitted.) *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 585 (2011). A fiduciary relationship may also arise as a matter of law, such as between a securities broker and his customer (*id.* at 592) or a lawyer and his client (*In re Imming*, 131 Ill. 2d 239, 252-53 (1989)).

¶ 38    Guarantee contends that the circuit court erroneously faulted it for failing to allege facts establishing a fiduciary relationship when the relationship it relied on was one arising as a matter of law between an employer and its employees. As an initial matter, it is not clear from Guarantee's allegations exactly when Mr. Graves and Mr. Lindvig were employed by Guarantee. The allegations merely state that "[Mr. Graves] was formerly employed by [Guarantee] as a Vice President" and "[Mr. Graves] hired [Mr. Lindvig] to work at [Guarantee] as a sales manager." Moreover, the case law suggests that employees owe duties of fidelity and loyalty to their employers, not necessarily a duty of candor. See, *e.g.*, *Corroon & Black of Illinois, Inc. v. Magner*, 145 Ill. App. 3d 151, 160 (1986) ("While acting as an agent or employee of another, one owes the duty of fidelity and loyalty. Accordingly, a fiduciary cannot act inconsistently with his agency or trust; for example, an employee cannot solicit his employer's customers for himself.").

¶ 39    But there is a more significant problem with Guarantee's argument. Even if we were to accept as true that, at all relevant times, Mr. Graves and Mr. Lindvig were fiduciaries who owed Guarantee a duty of candor and that this duty, together with their failure to come forward and admit involvement in the alleged scheme, established the affirmative acts of fraud necessary for fraudulent concealment, Guarantee has failed to show any causal connection between that breach and Guarantee's failure to discover the alleged fraud. For fraudulent concealment to apply, a plaintiff must include allegations that " 'attribute the failure to discover to the trust and confidence placed in the fiduciary.' " *Kheirkhahvash v. Baniassadi*, 407 Ill. App. 3d 171, 180-81 (2011) (quoting *Hagney*, 147 Ill. 2d at 464). This is an "essential element" that our supreme court has held "must be alleged in [the] plaintiffs' pleadings." *Hagney*, 147 Ill. 2d at 464.

¶ 40    The closest Guarantee comes to establishing such a causal connection is its assertion on appeal that it was not until Mr. Lindvig's deposition in 2012 that Guarantee first learned that Mr. Lindvig (and likely Mr. Graves as well) had accepted kickback payments in exchange for his participation in the alleged scheme. Guarantee insists that, by failing to disclose the kickbacks, Mr. Graves and Mr. Lindvig prevented Guarantee from discovering its claims against them. This is not a link that is specifically alleged in Guarantee's amended complaint. Even if it were, Guarantee has not established how concealment of the alleged kickbacks, which are merely one detail of the alleged scheme, prevented Guarantee from learning of the scheme itself.

¶ 41    Indeed, *any* causal connection between the silence of Mr. Graves or Mr. Lindvig and Guarantee's failure to timely assert its claims against them is simply incompatible with Guarantee's primary allegations. Guarantee alleged in the 2006 Complaint both that improper withdrawals were depleting the custodial account established in connection with the reinsurance agreement with Somerset and that one of Guarantee's own employees had improperly authorized the withdrawals. Silence by a fiduciary does not relieve a plaintiff from acting on knowledge that it already possesses. As the court made clear in *Melko v. Dionisio*, 219 Ill. App. 3d 1048, 1062 (1991), "although the existence of a fiduciary relationship may excuse a plaintiff's failure to investigate diligently to ascertain facts that would put her on notice of possible injury, there is plainly a difference between the failure to *ascertain* facts through diligent inquiry and the failure to *act upon* facts of which the plaintiff *already* has actual knowledge." (Emphases in original.)

¶ 42    Guarantee's reliance on *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273 (1982), for the proposition that Guarantee's failure to investigate its claims is somehow excused because of the conduct of Mr. Graves and Mr. Lindvig during discovery is also misplaced. In *Ostendorf*, the plaintiff was injured while operating a tractor and brought a products liability suit against the manufacturer. *Id.* at 278. When asked in written discovery requests if certain tests had been conducted on the product in question or if the defendant's employees had ever stated certain opinions, the defendant responded, respectively, that "[d]etailed records concerning specific tests [we]re no longer available" and "[n]ot to our knowledge." (Internal quotation marks omitted.) *Id.* at 280-81. The jury found in favor of the defendant, and several years later, the plaintiff filed a petition to set aside the judgment. *Id.* at 278. The filing was not made within the two-year time limitation for such petitions, but the plaintiff argued that evidence not considered at trial had been fraudulently concealed from him. *Id.* at 278, 281-82. The plaintiff attached responsive internal documents of the defendant's, which were obtained

by the plaintiff's counsel during his representation of another client in similar litigation. *Id.* at 281. Upon reviewing these documents, our supreme court concluded that the defendant's discovery responses were "if not outright falsehoods, half-truths" "hav[ing] the effect of affirmative concealment, since they impl[ied] that there [was] no information or evidence to be sought." *Id.* at 282.

¶ 43    *Ostendorf* is distinguishable because Guarantee points to no discovery responses in this case that were deceptive or misleading. When asked in 2008 who had knowledge of the transactions at issue, Mr. Kribbs provided a list of individuals that included both Mr. Graves and Mr. Lindvig and, in the fall of 2012 when Mr. Lindvig was deposed, he was asked and confirmed that he had long received payments directly from Mr. Kribbs. Guarantee's observation that "it was only after the limitation periods against Lindvig & Graves expired that they came forward and admitted that they had personally benefitted and had personally participated in the misappropriations" is no doubt true. It is equally true, however, that it was not until after the limitations period had expired that Guarantee—long possessing both the knowledge that one or more of its own employees was involved in the scheme and a short list of witnesses that included both Mr. Graves and Mr. Lindvig—bothered to depose either of these individuals regarding their involvement. There was no fraudulent concealment during discovery in this case that tolled the statute of limitations.

¶ 44                                   C. Equitable Arguments
¶ 45    Guarantee makes three additional arguments based on equitable principals, contending that (1) the statute of limitations is a purely legal defense that does not apply to actions in equity, (2) Mr. Graves and Mr. Lindvig should be equitably estopped from deriving any benefit from their fraud, and (3) equitable tolling applies because Mr. Graves and Mr. Lindvig caused an "extraordinary barrier" to bar Guarantee's assertion of its right. We agree with Mr. Graves and Mr. Lindvig that Guarantee forfeited these arguments by failing to raise them in the circuit court (see *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 695 (2010) ("a party who does not raise an issue in the trial court forfeits the issue and may not raise it for the first time on appeal")), an argument that Guarantee declined to address in its reply brief.

¶ 46    Forfeiture aside, Guarantee's equitable arguments also lack merit. It is generally true that statutes of limitation apply to actions at law and the doctrine of *laches* applies to actions in equity. *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 270 (2001). However, the relief Guarantee sought in connection with each of its claims was a money judgment, which is legal in nature, not equitable. See *In re Estate of O'Donnell*, 8 Ill. App. 2d 348, 352 (1956) (where relief sought was a money judgment, the action was one at law; the fact that the claim was asserted against a trustee for a breach of trust "d[id] not convert the claim into a suit in equity"), *abrogated on other grounds by Prodromos v. Everen Securities, Inc.*, 389 Ill. App. 3d 157, 174 (2009).

¶ 47    Moreover, to invoke the doctrine of equitable estoppel, a "plaintiff must have relied on acts or representations of the defendant which caused the plaintiff to refrain from filing suit within the applicable statute of limitations." (Internal quotation marks omitted.) *Kheirkhahvash*, 407 Ill. App. 3d at 182. The doctrine does not apply, however, "if [the] defendant's conduct terminated within ample time to allow the plaintiff an opportunity to file a cause of action within the limitation period." *Id.* Here, Guarantee fails to allege anything Mr. Graves and Mr.

Lindvig said or did after the filing of the 2006 Complaint that could reasonably have been relied on by Guarantee as a basis for not investigating their involvement in the alleged scheme.

¶ 48 Equitable tolling is likewise inapplicable. A limitations period may be equitably tolled where "extraordinary barriers" prevent the plaintiff from asserting its rights in a timely fashion, such as "legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Thede v. Kapsas*, 386 Ill. App. 3d 396, 403 (2008). Guarantee provides no reason that it could not have learned about the involvement in the alleged scheme of Mr. Graves and Mr. Lindvig within the five-year limitations period. Far from suffering from an "irredeemable lack of information," Guarantee knew that one of its own employees approved the withdrawals from the custodial account as early as December 2006 when it filed its initial complaint. Mr. Kribbs then disclosed to Guarantee during discovery in early 2008 a short list of individuals with knowledge of the transactions described in the complaint. And yet Guarantee elected not to depose any witnesses until the fall of 2012. The record indicates that the only thing preventing Guarantee from sooner discovering the purportedly revelatory information it learned in those depositions was its own lack of diligence. Under these circumstances, Guarantee's equitable arguments must fail.

¶ 49 CONCLUSION

¶ 50 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 51 Affirmed.