2022 IL App (2d) 220006-U
No. 2-22-0006
Order filed September 29, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| KIMBERLY A. KARDYS, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19-LA-405 |
| | ) | |
| CHRIS LAMPING; SUSAN HAVELKA; | ) | |
| THE BOARD OF LIBRARY TRUSTEES OF | ) | |
| THE CITY OF CRYSTAL LAKE; PAUL | ) | |
| WELLS, Indiv.; WELLS, INC.; RE/MAX OF | ) | |
| BARRINGTON; and THE BUSINESS PLAN, | ) | |
| INC., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Paul Wells, Indiv.; Wells, Inc.; RE/MAX | ) | Honorable |
| of Barrington; and the Business Plan, Inc. | ) | Thomas A. Meyer, |
| Defendants-Appellees.) | ) | Judge, Presiding. |

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held:* Consistent with prior case law, we reject plaintiff's suggestion that, under the discovery rule, the limitations period commenced at different times for the different defendants in plaintiff's personal injury suit based on a dog bite. The limitations period for all defendants commenced when plaintiff was bitten and, hence, was put on notice to inquire whether the dog attack resulted from actionable (human) conduct.

¶ 2 Plaintiff, Kimberly A. Kardys, was attacked by a dog at a residence occupied by defendants Chris Lamping and Susan Havelka. She filed a complaint against Lamping, Havelka, the Crystal Lake Public Library (Library), and the Board of Library Trustees of the City of Crystal Lake (Board). Later, plaintiff filed a second amended complaint against the foregoing defendants, other than the Library, and four new defendants: Paul Wells individually, Paul Wells Inc., RE/MAX of Barrington (RE/MAX), and The Business Plan, Inc. (collectively Wells defendants). The Wells defendants moved to dismiss the counts against them as barred by the two-year statute of limitations (see 735 ILCS 5/2-619(a)(5), 5/13-202 (West 2020)). The trial court granted the motion and denied plaintiff's motion to reconsider. She appeals (see Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)). We affirm.

¶ 3                                  I. BACKGROUND

¶ 4 On December 17, 2019, plaintiff filed a nine-count complaint against the four original defendants. She alleged the following core facts. Lamping and Havelka resided in a rented house in Crystal Lake (the property) where they kept a dog. The Board owned the house and leased it to Lamping and Havelka. The Board and the Library knowingly permitted the residents to keep the dog on the property. On December 27, 2018, after Lamping and Havelka allowed plaintiff inside the house, the dog attacked her without provocation and maimed her. She suffered personal injuries and financial losses.

¶ 5 Counts I and II sought recovery against Lamping based on the Animal Control Act (Act) (510 ILCS 5/16 (West 2018)) and common-law negligence. On the same bases, counts III and IV sought recovery against Havelka; counts V and VI sought recovery against the Board, and counts VII and VII sought recovery against the Library. Count IX also sought recovery against the Board, alleging that, by acquiring and leasing the property as a rental home, the Board breached its

statutory duty to take title to property solely for library purposes (see 75 ILCS 5/4-7 (10) (West 2018)).

¶ 6    On March 12, 2020, plaintiff filed a seven-count amended complaint that omitted the Library as a defendant but repeated the counts against the remaining defendants.

¶ 7    On February 11, 2021, plaintiff filed her second amended complaint. In addition to repleading the counts of the amended complaint, plaintiff alleged the following. On May 26, 2017, the Board acquired all title to the property. Later, the Board entered into a contract with Wells and RE/MAX to manage the property. On December 27, 2018, the Wells defendants knowingly permitted the dog to remain at the property. As alleged previously, the dog was unrestrained and, without provocation, attacked and maimed defendant.

¶ 8    Counts I through VII of the second amended complaint were similar to the corresponding counts in the amended complaint. Counts VIII and IX were directed against Wells individually; counts X and XI were directed against Wells, Inc.; counts XII and XIII were directed against RE/MAX; and counts XIV and XV were directed against The Business Plan, Inc. Plaintiff sought recovery against each Wells defendant based on the Act and common-law negligence.

¶ 9    On April 14, 2021, the Wells defendants moved per section 2-619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(5) (West 2020)) to dismiss counts VIII through XV as barred by the two-year statute of limitations for personal injury actions (735 ILCS 5/13-202 (West 2018). They contended that plaintiff's causes of action arose on December 27, 2018, when she knew or should have known of it.

¶ 10    Plaintiff responded that, under the discovery rule, her causes of action against the Wells defendants arose less than two years before she filed the second amended complaint. Plaintiff alleged the following facts. On May 21, 2020, she served on all then-named defendants

interrogatories and a request to produce. On October 2, 2020, the Board served her with its answers to the interrogatories. It was only then that plaintiff became aware that Wells was acting as the Board's agent for the property. On December 10, 2020, plaintiff served Wells with a subpoena to produce specified documents related to the case. Soon afterward, Wells produced the documents, including a "Rental Property Management Contract" (Contract) signed by Wells, RE/MAX, and the Board, under which the first two assumed management and control of the property. On February 11, 2021, plaintiff filed the second amended complaint. Until plaintiff and her counsel reviewed the materials, they had no reason to know that the Wells defendants had any involvement with the property. Plaintiff's response attached copies of the discovery requests, the Board's answers to her interrogatories, the subpoena to Wells, and the Contract.

¶ 11 Plaintiff argued that, under the discovery rule, the limitations period starts to run "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." (Internal quotation marks omitted.) *Knox College v. Celotex*, 88 Ill. 2d 407, 416 (1981). Plaintiff reasoned that, although she became aware of her injuries on December 27, 2018, she did not then become aware that the Wells defendants had any relationship with the Board, which owned the property. The Contract was not disclosed by the Board in response to plaintiff's request to produce, but was produced by Wells only after plaintiff subpoenaed him. Until then, plaintiff did not know and could not reasonably have known that any of the Wells defendants had any involvement with the management of the property. Thus, she could not reasonably have known that her injuries were wrongfully caused by any of Wells defendants.

¶ 12 On July 14, 2021, the trial court dismissed the counts against the Wells defendants and made the dismissal immediately appealable under Rule 304(a). On August 13, 2021, plaintiff

moved to reconsider the dismissal order. She relied on the principle that, "where a plaintiff is aware that her injury might have been wrongfully caused by one source, but could not as yet have been aware of another potential source at that time," the limitations period for the latter source does not begin until it is "discoverable." *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 25. Therefore, she contended, the date the limitations period began to run against the Wells defendants was a question of fact, and so the dismissal was improper. Plaintiff's motion attached copies of (1) her interrogatories and request to produce directed to the Board and (2) the Board's answers to the interrogatories and request to produce.

¶ 13    The trial court denied plaintiff's motion to reconsider. She timely appealed.

¶ 14                              II. ANALYSIS

¶ 15    On appeal, plaintiff raises two grounds to reverse the dismissal of the counts against the Wells defendants. First, she contends that, under the discovery rule, the counts against the Wells defendants were timely. Second, she contends that these counts were also timely under the relation-back doctrine (see 735 ILCS 5/2-616(d) (West 2020)). Defendants respond first that the trial court properly applied the discovery rule. They respond second that (1) plaintiff has forfeited reliance on the relation-back doctrine because she failed to raise it in the trial court and, (2) in any event, the doctrine does not apply here.

¶ 16    Initially, we consider whether the trial court erred in finding that the discovery rule did not rescue plaintiff's otherwise time-barred counts against the Wells defendants. Although the question of whether an action was brought within the time allowed by the discovery rule is ordinarily one of fact, where it is clear from the undisputed facts that only one conclusion can be drawn, it may be resolved as a matter of law. *Newell v. Newell*, 406 Ill. App. 3d 1046, 1051 (2011). Here, the undisputed facts allow for only the conclusion reached by the trial court. This is an issue

of law that we review *de novo*. See *Guarantee Trust Life Insurance Co. v. Kribbs*, 2016 IL App (1st) 160672, ¶ 27.

¶ 17    A personal-injury action must be commenced within two years of the date that the cause of action accrued. 735 ILCS 5/13-202 (West 2018). As a general rule, a cause of action for personal injuries accrues when the plaintiff suffers injury. *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 361 (1995). However, as the literal application of the limitations period could unfairly bar a plaintiff from bringing suit before he was even aware of the injury, the discovery rule postpones the start of the limitations period "until the injured plaintiff knows or reasonably should know that he has been injured and that [the] injury was wrongfully caused." *Id.* at 360-61. The person need not actually know of negligent conduct or the existence of a cause of action. *Dockery v. Ortiz*, 185 Ill. App. 3d 296, 305 (1989). The period starts when he " 'becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' " *Kribbs*, 2016 IL App (1st) 160672, ¶ 29 (quoting *Knox College* 88 Ill. 2d at 416).

¶ 18    Our supreme court "has repeatedly held that, where the plaintiff's injuries are caused by a sudden traumatic event, the plaintiff's cause of action accrued when the injury occur[s]." *Golla*, 167 Ill. 2d at 361. Here, plaintiff's injuries were caused by a sudden traumatic event—a dog attacked and mauled her. She knew then that she was injured. Thus, she was put on inquiry to determine whether the unexpected and unprovoked attack resulted from actionable (human) conduct. It follows that Plaintiff's addition of the Wells defendants more than two years after the attack was too late.

¶ 19    Plaintiff, however, contends that the crucial issue is not when she was on notice that her injury might have been wrongfully caused, but when she was on notice that her injury might have

been wrongfully caused *by the Wells defendants*. Plaintiff does not deny that, when the dog attacked her on December 27, 2018, she immediately had a duty to inquire into whether Lamping and Havelka had committed actionable conduct. But she argues that, because she could not reasonably have known until much later that the Wells defendants had any connection with the property, the limitations period as to those defendants did not start until that later date.

¶ 20    Plaintiff's claim rests on the assumption that the application of the discovery rule is defendant-specific: the limitations period can begin at different times against different defendants if their circumstances differ sufficiently. However, this assumption is directly contrary to supreme court precedent as interpreted by our appellate courts.[1]

¶ 21    On its face, the discovery rule, as stated in *Golla* and *Knox College*, does not distinguish between possible defendants. It speaks of one limitations period that begins when the plaintiff knows or should know of the injury and that it was "wrongfully caused" (*Golla*, 167 Ill. 2d at 361), *i.e.*, when the plaintiff has sufficient information to create a duty to inquire "whether actionable conduct is involved" (*Knox College*, 88 Ill. 2d at 416). This phraseology certainly implies that the period starts just once: when the plaintiff knows of the injury and has sufficient reason to inquire whether it was wrongfully caused—*by anybody*.

¶ 22    Several opinions of the appellate court have interpreted *Golla* and *Knox* as holding that there is but one limitations period after a plaintiff knows of an injury that is wrongfully caused. We begin with *McCormick v. Uppuluri*, 250 Ill. App. 3d 386 (1993). There, on August 1, 1995, the plaintiff filed a medical malpractice action against three doctors, not including Uppuluri, based

---

[1]Plaintiff cites *none* of these opinions. The Wells defendants rely solely on *Knox* and *Golla* but do not directly apply them to plaintiff's theory that the discovery rule is defendant-specific.

on injuries the plaintiff suffered while he was hospitalized in September and October 1984. In 1987, he voluntarily dismissed the action. He did not refile it. On September 20, 1988, he filed an action against Uppuluri, based on the same injury. Uppuluri moved for summary judgment, arguing that the suit was barred by the two-year statute of limitations for medical malpractice because it was filed more than three years after the latest possible date it could be argued plaintiff had notice of the wrongfully caused injury, *i.e.*, August 1, 1995, the date the plaintiff filed the earlier lawsuit. The plaintiff responded that the discovery rule saved his action, because it was not until June 1987, when an expert opined that Uppuluri had been at fault, that the plaintiff discovered that he had a cause of action against him. The trial court granted summary judgment for Uppuluri. *McCormick*, 250 Ill. App. 3d at 387-389.

¶ 23    The appellate court affirmed. The court explained that the limitations clock starts not when a plaintiff knows of a specific defendant's negligent conduct but when he knows enough information to put him on notice to determine whether actionable conduct was involved. *Id.* at 391. As a matter of law, the limitations period started to run no later than August 1, 1995, the date the original suit was filed, which was the very latest date it could be argued plaintiff was on notice, albeit not with respect to Uppuluri. *Id.*

¶ 24    Though *McCormick* did not *explicitly* hold that there could not be two different limitations periods for defendants who were sued at different times, two later opinions did so.

¶ 25    In the first case, *Wells v. Travis*, 284 Ill. App. 3d 282 (1996), the plaintiff's decedent died of diabetes on February 10, 1991. On February 3, 1993, the plaintiff filed a malpractice action against Dr. Travis, who had allegedly failed to diagnose and treat the decedent's illness. *Id.* at 284. During discovery, two defense experts testified in depositions that a second doctor, Valika, who had consulted with Travis, had deviated from the standard of care and that the decedent would

have survived had Valika treated him correctly. *Id.* at 285. On January 19, 1995, the plaintiff filed an amended complaint adding Dr.Valika as a defendant. The trial court dismissed the counts against Valika as filed beyond the two-year limitations period for medical malpractice. *Id.* at 284.

¶ 26 On appeal, the plaintiff argued that the counts against Valika were timely filed because it was not until after the two experts' depositions were taken that she was on notice that she had a potential cause of action against *Valika*. *Id.* at 286. This court flatly rejected her reasoning:

> "The essence of plaintiff's position is that a person is not charged with knowledge sufficient to trigger the running of the statute of limitations period as to any particular defendant until the person knows or reasonably should know that the injury was wrongfully caused by the negligence *of that defendant*. The supreme court has expressly disavowed any such interpretation of the discovery rule." (Emphasis in original.) *Id.* at 287 (citing *Knox College*, 88 Ill. 2d at 416.)

We added, "Knowledge that an injury has been 'wrongfully caused' does not mean knowledge of a specific defendant's negligent conduct." *Id.*

¶ 27 In *Castello v. Kalis*, 352 Ill. App. 3d 736 (2004), between 1988 and February 1997, Vivian Castello received care from a medical practice group and two of its individual members. She alleged that, from August 1996 through February 1997, they negligently failed to investigate her condition, with the result that there was a long delay before she was diagnosed with cervical cancer by other doctors on March 3, 1997. *Id.* at 737-38. In April 1998, Castello filed a complaint for malpractice against the medical group and two of its individual members. In October 1998, she filed a first amended complaint adding as defendants a company (Cytology) and several of its employees including Olga Kalis, who had analyzed Castello's pap smears between 1992 and July 1996 and reported that the results were normal. *Id.* at 739-40. After Castello passed away, her

estate (the plaintiff) amended the complaint further, adding other Cytology employees. Kalis moved for summary judgment on the count against her, based on the two-year statute of limitations for medical malpractice. The trial court granted the motion, explaining that the limitations period started on March 3, 1997, when the decedent knew that she had cancer—more than two years before the plaintiff added Kalis as a defendant. *Id.* at 737. The plaintiff appealed.

¶ 28    The appellate court affirmed. The court agreed with Kalis that "the term 'wrongfully caused' does not include knowledge of a *specific* defendant's conduct." (Emphasis in original.) *Id.* at 743. The court cited *Wells* as directly on point. *Id.* at 745-47. It noted further that, in *Wells*, we rejected the argument that the discovery rule can be applied defendant-by-defendant and that "our supreme court has expressly disavowed any such interpretation of the discovery rule." *Id.* at 749.

¶ 29    *Castello* applied *Wells* to facts that are indistinguishable from those in both *Wells* and here. There and here, the plaintiff filed a timely complaint against the original defendant(s). In each case, the plaintiff filed an amended complaint, beyond the limitations period that added one or more defendants. In each case, the trial court dismissed the added counts as untimely, on the basis that the limitations period began to run when the plaintiff was on notice that she had a cause of action, regardless of whom it might be against. In each case, the plaintiff argued on appeal that the limitations period did not begin to run against the new defendant(s) until she was placed on notice that she had a cause of action against the new defendants specifically. As in *Wells and Castello,* we squarely rejected the theory that the discovery rule is defendant-specific. We do so again here.

¶ 30    Plaintiff's briefs do not cite *Wells*, *Castello*, or several other opinions that disapprove of plaintiff's theory of a defendant-specific discovery rule. See, *e.g.*, *Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 21 (21 (holding discovery rule did not apply to plaintiff's claim against firm that he alleged aided and abetted its client's breach of fiduciary duty);

*Carlson v. Fish*, 2015 IL App (1st) 140526, ¶¶ 19, 39 (holding discovery rule did not apply to plaintiff's legal malpractice claim against his advisors in mediation proceeding after plaintiff decided to pursue fraud claims against adversaries arising out of mediation); *Young v. McKiegue*, 303 Ill. App 3d 380, 389 (1999) (holding discovery rule did not apply to wrongful death claims against non-treating physicians on call at the time of the alleged malpractice). Instead, Plaintiff relies entirely on a statement that she takes from *Mitsias*:[2]

> "[W]here a plaintiff knows or should reasonably know that her injury was caused by one source, but remains unaware of another source that could not be discovered through the exercise of diligent inquiry, the statute of limitations does not begin to run with regard to that second source until such time as that second source would become discoverable through diligent inquiry." *Mitsias*, 2011 IL App (1st) 101126, ¶ 31.

¶ 31    Plaintiff contends that this holding applies here and argues that the Wells defendants were a "second source" of her injury. However, reading *Mitsias'* holding in context refutes this expansive construction of the discovery rule.

¶ 32    In *Mitsias*, a doctor performed surgery on the plaintiff on October 24, 2001. On October 22, 2003, she filed a malpractice action against him and his hospital. *Id.* ¶¶ 6-7. In a 2007 deposition, plaintiff's physician testified that, within the preceding two years, medical scientists had discovered that the plaintiff's type of injury can sometimes be caused by "pain pumps" such as the one that had been used to anesthetize her for her surgery. *Id.* ¶ 9.

---

[2]Plaintiff points to this language only in her reply brief, although her opening brief does cite *Mitsias* for general propositions of law.

¶ 33     The plaintiff voluntarily dismissed her action. In 2009, she filed a new action against the doctor who performed the surgery and the company that manufactured the pain pump. The company moved to dismiss the counts against it as barred by the two-year statute of limitations for product liability suits. The plaintiff responded that the statute of limitations did not start to run until the 2007 deposition, when her physician stated that only within the last two years did science find the connection between pain pumps and her type of injury. *Mitsias*, 2011 IL App (1st), ¶¶ 9-11. The trial court dismissed the claims against the company. The plaintiff appealed.

¶ 34     The appellate court framed the issue in the case as

> "how the discovery rule is applied when a plaintiff is aware that her injury might have been wrongfully caused by one source but is unaware that her injury might have been caused by another source and, in fact, *could not be aware of that source because the causal link was as yet unknown to science.*" (Emphasis added.) *Id.* ¶ 19.

It was in this context that the court rejected the company's argument that the limitations period could start only once—when the plaintiff was on notice of the possibility that her injury might have been wrongfully caused "by *any* source." (Emphasis in original.) *Id.* We note that the opinion used the word "source," not "defendant."

¶ 35     The court held that the two-year statute of limitations did not start to run until the 2007 deposition revealed a scientific basis for liability that had been undiscovered for more than two years after the injury. The reason was that "[the plaintiff's] delay in bringing her products liability suit was not due to any lack of diligence on her part but, rather, to the fact that the scientific community was not aware of the dangers associated with pain pumps until the summer of 2007." *Id.* ¶ 29. She would not be " 'held to a standard of knowing the inherently unknowable.' " *Id.* (quoting *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981)).

¶ 36     We do not believe that *Mitsias* applies beyond its narrow factual context, especially as doing so would repudiate the long line of authority that the discovery rule is not defendant-specific. We note that the *Mitsias* court spoke of an injury being caused by "another source" than the original one suspected. There, the original source was the conduct of the doctor and the later source was the functioning of a machine that the doctor used without having any basis to suspect that it could cause the injury that the plaintiff suffered. The machine's involvement in plaintiff's injury was scientifically unknowable at the time plaintiff learned of her cancer.

¶ 37     Here, the sole *source* of plaintiff's injury was the dog attack. The dog attack caused the injury, and that cause underlies all counts of her action, irrespective of a particular defendant. No scientific advances were needed to reveal the Wells defendant's possible involvement in failing to prevent an injury on the property they managed. Indeed, we note that *Mitsias* distinguished *Wells*, plainly implying that it was not intended to repudiate it (or *McCormick* or *Castello*.) It reasoned that, in *Wells*, the plaintiff had been put on notice before the expiration of the limitations period that the added defendants might have wrongfully caused the injuries, and thus those defendants were not inherently unknowable within the limitations period. *Mitsias*, 2011 IL App (1st), ¶ 38. To the extent *Mitsias* might be read to approve a defendant-specific application of the discovery rule more generally, we do not follow it.

¶ 38     For the first time on appeal, Plaintiff argues the relation-back doctrine as an alternative ground for reversing the trial court's dismissal of the Wells defendant counts. We agree with defendants that she has forfeited the relation-back doctrine as a ground for reversal where she never raised the relation-back doctrine in response to the Wells defendants' motion to dismiss. An appellant may not seek reversal on a theory not raised in the trial court. *Crichton v. Golden Rule Insurance Co.*, 358 Ill. App. 3d 1137, 1148 (2005). Applying the forfeiture rule is especially

appropriate where the opposing party could have introduced in the trial court evidence to contest or refute the theory raised for the first time on appeal. See *Evans v. United Bank of Illinois*, *N.A., Trust No. 1233*, 226 Ill. App. 3d 526, 531 (1992). A prerequisite for invoking the relation-back doctrine against a new defendant is that the new defendant, within the time that the action might have been brought or the right asserted against it, plus the permitted time for service, "received such notice of the commencement of the action that the [new defendant] will not be prejudiced maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her." 735 ILCS 5/2-616(d)(2) (West 2020). By failing to raise the relation-back doctrine in the trial court, plaintiff denied the Wells defendants the opportunity to introduce evidence on whether (1) any of them, within the pertinent period, received such notice of the new action so as not to be prejudiced in defending it on the merits and (2) any of them would have known that, but for mistaken identity (assuming that mistaken identity is pertinent here), the action would have been brought against that new defendant. Allowing plaintiff to exploit her forfeiture by raising the relation-back doctrine for the first time on appeal is simply not fair.

¶ 39    To evade forfeiture, Plaintiff argues for the first time in her reply brief that we should disregard forfeiture because "the concepts of the relation-back doctrine are similar to the Discovery Rule" and we may disregard forfeiture "in the interest of a just result." Plaintiff's argument that the discovery rule and the relation-back doctrine are similar, such that raising one encompasses the other, ignores essential differences between the two. The relation-back doctrine hinges on what the new *defendant* knew or should have known at a given time, while the discovery rule's applicability hinges on what the *plaintiff* knew or should have known at a given time. See *Maggi*

*v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 31. Conflating the two exceptions to the statute of limitations gives plaintiff an unfair advantage and does not promote a just result.

¶ 40    Simply put, neither the discovery rule nor the forfeited relation-back doctrine warrant reversing the trial court's dismissal of the counts against the Wells defendants.

¶ 41                                III. CONCLUSION

¶ 42    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 43    Affirmed.