FIRST DISTRICT
FOURTH DIVISION

No. 1-10-0151

| | | |
|---|---|---|
| AFROUZ KHEIRKHAHVASH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No.  09 L 9943 |
| | ) | |
| REZA BANIASSADI, | ) | Honorable |
| | ) | Ronald S. Davis, |
| Defendant-Appellee. | ) | Judge Presiding. |
| | ) | |

Presiding Justice Gallagher delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

Plaintiff-appellant, Afrouz Kheirkhahvash, filed a complaint against defendant-appellee Reza Baniassadi, alleging legal malpractice and fraud based on Baniassadi's representation of Kheirkhahvash in immigration proceedings.  Baniassadi filed a motion to dismiss pursuant to section 2-619(a)(5) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2008)) on the grounds that the complaint was time barred under section 13-214.3 of the Code (735 ILCS 5/13-214.3(b), (c) (West 2008)).  The circuit court granted the motion to dismiss with prejudice and denied Baniassadi's request for attorney fees and sanctions.  On appeal, Kheirkhahvash contends that the circuit court erred in dismissing the complaint as time-barred where a factual dispute exists as to when Kheirkhahvash discovered Baniassadi's

negligence, the negligence alleged was continuous and Kheirkhahvash incurred increasingly severe injuries, and a language barrier prevented the timely discovery of the injury and damages. Kheirkhahvash further contends that Baniassadi's acts of fraudulent concealment bar him from raising a statute of limitations defense. For the following reasons, we affirm the judgment of the circuit court.

## BACKGROUND

Kheirkhahvash was born in Iran. She came to the United States on a visitor's visa on August 3, 1999. Her visa was set to expire in February 2000. Kheirkhahvash was fluent in Farsi and could not read, speak or write English. She retained Baniassadi, whose first language is also Farsi, in January or February of 2000. Baniassadi obtained an extension of her visitor's visa to July 2000. Kheirkhahvash also sought Baniassadi's advice on the issue of remaining in the United States permanently. According to Kheirkhahvash, she told him that she had come to the United States because she was afraid of her abusive husband and that she also wanted Baniassadi's help in obtaining a divorce. Baniassadi told her that fear of her husband was not a sufficient reason for her to obtain asylum and that she should seek asylum on political grounds, based on a fear of persecution by the Iranian government. He asked about her political involvement and she told him she had never been involved in politics. He told her he would prepare a statement that he had used successfully with other clients.

Baniassadi prepared an asylum application that contained Kheirkhahvash's personal information. In the section of the application that asked for the information regarding the nature of the asylum claim, he included a reference to an attached exhibit. Kheirkhahvash signed the

1-10-0151

application itself (without the exhibit) on February 16, 2000. In June 2000, she signed two more documents, an attorney appearance form and another document containing biographical information.

On August 1, 2000, Baniassadi filed Kheirkhahvash's asylum application. A verified personal statement was attached to the application. According to the statement, Kheirkhahvash became a supporter of Mojahedin Khaleq[1] (MEK) when she was in high school. It stated that she was put on probation by her school's Islamic committee and told that if she did not stop her anti-Islamic activities, she would be expelled from school and reported to the revolutionary guards. The statement claimed that although Kheirkhahvash passed her university entrance exam, she was put on probation for two years and ordered to support the Islamic regime, comply with Islamic dress code and attend her local mosque. When she was finally admitted to the university, she was put on probation for refusing to attend the mosque and voicing opposition to the regime. The university then reported her to the revolutionary guards. According to the statement, she and her father were both detained by the revolutionary guards and were interrogated and tortured. She married a man who allegedly was also a supporter of MEK and worked as a journalist for a magazine that was shut down by the regime. He was also interrogated and tortured by the revolutionary guards. The statement concluded by stating that Kheirkhahvash was detained and tortured a second time and upon her release, she went into hiding and was able to get out of Iran and come to the United States.

---

[1]The record and briefs contain many spelling variations for the name of this organization, *e.g.*, Mujahedin-e Khalq, Muhajadeen-el-Kalq, Mujahedeen-e-Khalq, etc.

The statement was signed, but Kheirkhahvash maintains that the signature on the statement is not hers and points out that it does not match other documents containing her actual signature. She also maintains that she did not see the statement until Baniassadi sent her a version of the statement that had been translated into Farsi in late August/early September, after her application had already been filed. He told her she needed to memorize the statement for her upcoming interview with immigration officials. Kheirkhahvash told him that the statement was false, she knew nothing about the MEK, her husband had never been a journalist and was not a supporter of MEK, and she could not testify to such facts. Baniassadi told her that because the application had already been filed, she had no choice but to testify to those facts or she would be denied asylum and would be deported to Iran for filing a false application.

At the immigration interview, Kheirkhahvash testified through a translator to the facts in the verified personal statement. At the conclusion of the interview, Baniassadi told her that her application would be approved and that she would get her green card. In fact, the asylum application was denied and she was served with a notice to appear in immigration court for a removal hearing. When she asked Baniassadi to explain the meaning of the notice, he told her that her application had been referred to an immigration judge and it would be reconsidered and granted. He again told her that his other Iranian clients had claimed persecution on account of their sympathies for the MEK and were granted asylum. He warned her that if she tried to withdraw her personal statement, the immigration judge would order that she be deported to Iran.

Kheirkhahvash said that before her removal hearing, Baniassadi told her that her father had to testify to the facts in the personal statement. When Kheirkhahvash showed the statement

4

to her father, he became very angry with her. He refused to testify and tried to get Baniassadi to withdraw the asylum application. He said that he did not want to lie, that nobody in Iran supports the MEK, and that he did not want to get involved in anything to do with the MEK. Her father eventually agreed to testify after Baniassadi persuaded him that if he did not testify, his daughter would be deported to Iran.

On April 15, 2002, a hearing was held before an immigration judge and Kheirkhahvash's father testified to the facts in the personal statement. The government attorney introduced evidence that the MEK was listed as a terrorist organization by the Attorney General of the United States. Kheirkhahvash maintains that her father's testimony was inconsistent, and that Baniassadi requested a continuance because he realized he needed additional evidence. He prepared an additional affidavit for her mother to sign that described in detail how Kheirkhahvash was beaten and tortured because of her support for the MEK. On April 24, 2002, Kheirkhahvash testified according to the facts in the verified personal statement. The immigration judge denied her asylum application and her withholding of removal request, finding that she was a member of a terrorist organization and that she posed a danger to the security of the United States. The judge ordered that she be deported to Iran.

On May 24, 2002, Baniassadi filed a motion to reconsider. The motion was denied on July 12, 2002, and Baniassadi filed an appeal with the Board of Immigration Appeals on August 12, 2002. On October 10, 2002, Kheirkhahvash was taken into custody by the Department of Homeland Security, Immigration and Customs Enforcement. She was released from detention

5

under an order of supervision dated February 4, 2003[2]. On October 8, 2003, the Board of Immigration Appeals entered an order affirming the denial of Kheirkhahvash's asylum application and withholding of removal on the basis of her admitted affiliation with MEK. However, the order returned the case to the immigration judge for consideration of Kheirkhahvash's claim for protection under the Convention Against Torture.

Sometime after her release from custody, Kheirkhahvash consulted with and subsequently retained new counsel. The record contains a consent to attorney withdrawal dated November 24, 2003, withdrawing the appearance of Baniassadi as Kheirkhahvash's attorney. It also contains a consent to substitution of counsel dated November 25, 2003, authorizing the appearance of her current attorney. Both documents are stamped as being received in court on December 3, 2003. In a letter dated November 24, 2003, and file stamped November 25, 2003, Kheirkhahvash requested the Attorney Registration and Disciplinary Commission (ARDC) to investigate Baniassadi for advising her to file and testify falsely with regard to her asylum application. On July 14, 2004, Kheirkhahvash's current attorney filed a motion to withdraw her original asylum application, contending that it was the product of ineffective assistance of counsel. On August

_____

[2]Both the complaint and appellant's brief state that Kheirkhahvash was detained on October 10, 2003, and released February 24, 2004, under an order of supervision. Documents filed by the appellee state that Kheirkhahvash was detained on October 10, 2002, and was released February 4, 2003. The only official document in the record relating to the detention is an order of supervision dated February 4, 2003. Thus, because Kheirkhahvash was released from custody in February 2003, we conclude she was in fact detained in October 2002.

21, 2009, Kheirkhahvash filed a complaint against Baniassadi alleging legal malpractice and fraud.

Baniassadi filed a motion to dismiss the complaint as untimely and the trial court granted the

motion on December 18, 2009. This appeal follows.

ANALYSIS

A motion for involuntary dismissal under section 2-619 admits the legal sufficiency of the

complaint but asserts an affirmative defense or other matter that avoids or defeats the claim.

*DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). "The purpose of a section 2-619 motion is to

dispose of issues of law and easily proved issues of fact early in the litigation." *Czarobski v. Lata*,

227 Ill. 2d 364, 369 (2008). When ruling on a section 2-619 motion, a court must interpret all

pleadings and supporting documents in the light most favorable to the nonmoving party. *Porter v.*

*Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). Our review of a section 2-619 motion

to dismiss is *de novo*. *Id*.

Baniassadi filed his motion to dismiss pursuant to section 2-619(a)(5), which provides for

involuntary dismissal on the grounds that the action was not commenced within the time limited

by law. 735 ILCS 5/2-619(a)(5) (West 2008). The statute of limitations for a legal malpractice

action is set forth in section 13-214.3 of the Code, which provides that an action against an

attorney for damages based on tort, contract or otherwise arising out of an act or omission in the

performance of professional services "must be commenced within 2 years from the time the

person bringing the action knew or reasonably should have known of the injury for which

damages are sought." 735 ILCS 5/13-214.3(b) (West 2008). Section 13-214.3 also contains a

statute of repose. It provides that an action for legal malpractice "may not be commenced in any

1-10-0151

event more than 6 years after the date on which the act or omission occurred." 735 ILCS 5/13-214.3(c) (West 2008).

In arguing that the trial court erred in dismissing her complaint as time barred, Kheirkhahvash raises multiple issues, some of which overlap and will be discussed as a single issue. First, Kheirkhahvash contends that the trial court erred in equating her discovery in September 2000 that Baniassadi had filed a false asylum application with the date on which she knew or reasonably should have known of the injury. Kheirkhahvash argues that even if the negligent act occurred on August 1, 2000, with the filing of the false asylum application, and she discovered in September 2000 that a false statement had been filed, she did not realize at that time that she had sustained an injury, nor had she incurred actual damages. Kheirkhahvash further contends that the trial court ignored allegations in the complaint that she was prevented from timely discovering her injuries because of language and cultural barriers.

As an initial matter, although both parties' briefs indicate that the trial court concluded that Kheirkhahvash knew of the alleged negligence in September 2000, we note that the trial court's order contains no date for when the statute of limitations began to run. It merely states that Kheirkhahvash's complaint is dismissed with prejudice "as being time barred by the Statute of Limitations of 2 years in contract and 5 years in fraud." There is nothing in the record to indicate a determination by the trial court as to the date on which Kheirkhahvash knew or reasonably should have known she had a cause of action. There is also no evidence in the record that the trial court "ignored" allegations in the complaint that language and cultural barriers prevented the timely discovery of Kheirkhahvash's injuries.

8

We now turn to the issue of whether the trial court erred in dismissing the complaint as time barred. We agree with Kheirkhahvash that the statute of limitations did not begin to run in late August/early September 2000 when Baniassadi faxed her a copy of the personal statement in Farsi and she told him it was false. The general rule in Illinois is that a cause of action for legal malpractice does not accrue until the entry of an adverse judgment, settlement, or dismissal of the underlying action in which the plaintiff has become entangled due to the alleged negligent advice of her attorney. *Warnock v. Karm Winand & Patterson*, 376 Ill. App. 3d 364, 371-72 (2007). This court has noted that "[t]here may be rare cases in which it is painfully obvious, prior to any adverse ruling against the plaintiff client, that he has been injured as a result of professional negligence." *Id*. at 372. However, this is not such a case. Kheirkhahvash did not speak English or understand the immigration process and relied upon the advice of her attorney. It would not have been obvious to her at that point in time that she would be deported on the basis of the false asylum application. In fact, Baniassadi assured Kheirkhahvash that he had successfully obtained political asylum for other clients on those grounds and that she would be deported if she did *not* go along with the story. Thus, the earliest date at which the statute of limitations could have started to run is April 24, 2002, the date the immigration judge entered an order finding Kheirkhahvash to be a member of a terrorist organization and ordering her deportation to Iran.

Moreover, we agree with Kheirkhahvash that due to language and cultural barriers, it is unlikely that she knew or reasonably should have known even at that time that she had a cause of action against Baniassadi, who continued to reassure her that he would appeal the decision and the order would be reversed. However, once Kheirkhahvash obtained new counsel, it can no

longer be argued that she should not reasonably have known that she had a cause of action against Baniassadi. Her new counsel obviously knew about the false asylum application and the effect it had on her client, as evidenced by the filing of an ARDC complaint against Baniassadi on those grounds on November 25, 2003. Thus, the very latest date that the statute of limitations could have started to run is November 25, 2003, which means that, barring any applicable exception, her cause of action expired on November 25, 2005, and the trial court correctly dismissed the complaint.

Next, Kheirkhahvash argues that the court erred in applying the statute of limitations as a bar to this action because the negligence perpetrated by Baniassadi was continuous and Kheirkhahvash incurred increasingly severe injuries. She contends that her complaint was timely filed because Baniassadi committed continuous acts of negligence until December 3, 2003, when he withdrew as Kheirkhahvash's counsel, at which time the wrongful acts ceased. Thus, because her complaint was filed on August 21, 2009, Kheirkhahvash maintains that it was within the six year statute of repose and was therefore timely filed.

We need not address the issue of whether Baniassadi's negligence was continuous because this argument has no merit on its face. Even if we were to agree that the statute of repose did not start running until Baniassadi's withdrawal, the complaint would not have been timely filed under the statute of limitations. A statute of limitations and a statute of repose are not interchangeable. A statute of limitations governs the time within which lawsuits may be filed after a cause of action has accrued, while a statute of repose extinguishes the action itself after a set period of time, regardless of when the action accrued. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001). In

*Ferguson*, our supreme court stated:

"Unlike a statute of limitations, which begins running upon accrual of a cause of action, a statute of repose begins running when a specific event occurs, regardless of whether an action has accrued or whether an injury has resulted. [Citation.]

A statute of repose gives effect to a policy different from that advanced by a statute of limitations; it is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his or her cause of action." *Id*.

Once Baniassadi withdrew as counsel, Kheirkhahvash knew or reasonably should have known that she had a cause of action. A deportation order had been entered on April 24, 2002, so she already knew of her injury. Once she obtained new counsel, it is clear that she knew her injury had been wrongfully caused because she filed an ARDC complaint. Although the attorney consent for withdrawal was received in court December 3, 2003, the document stated that it was effective November 24, 2003, one day prior to the filing of her ARDC complaint against Baniassadi on November 25. Therefore, she knew at that time that she had a cause of action and the statute of limitations began to run. Whether the statute of repose began to run the same day her action accrued or three years earlier is irrelevant. The statute of repose could not operate as a statute of limitations and give her six years instead of two in which to file her action. Under the statute of limitations, her cause of action expired at the latest on November 25, 2005.

Third, Kheirkhahvash argues that the trial court erred in concluding as a matter of law that her claim was time barred when a factual dispute existed as to when she discovered Baniassadi's

negligence. We note that Kheirkhahvash does not state anywhere in her brief when she believes she discovered Baniassadi's negligence. She obviously knew she had a cause of action when she filed her complaint on August 21, 2009. Yet she does not point to anything that happened within the two years prior to that date that caused her to suddenly discover Baniassadi's negligence. She claims that the statute of repose began to run when Baniassadi withdrew as counsel and his wrongful acts ceased. But she also claims that she did not discover that she had a cause of action when she retained her current counsel in November 2003, because Baniassadi did not admit to her current counsel that he had been grossly negligent in his representation. This argument is without merit. It suggests that the only way Kheirkhahvash's current counsel could have learned of the negligence was through Baniassadi himself.

In fact, Kheirkhahvash filed an ARDC complaint on November 25, 2003, in which she requested an investigation of Baniassadi for advising her to file and testify falsely with regard to her asylum application. Her current counsel most certainly knew or should have known at that time that she had a cause of action. Therefore, at the very latest, the statute of limitations began to run on November 25, 2003. While the time when an injured party knew or reasonably should have known of the injury and that it was wrongfully caused is usually a disputed question to be resolved by the finder of fact, if it is apparent from the undisputed facts that only one conclusion can be drawn, the question becomes one for the court. *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981). There is nothing in the record to indicate that there is any possibility that Kheirkhahvash did not know of the negligence at the time she filed the ARDC complaint. Thus, the trial court did not err in determining as a matter of law that her complaint was time barred.

1-10-0151

Finally, Kheirkhahvash contends that under the doctrine of equitable estoppel, Baniassadi is prevented from raising a statute of limitations defense because he engaged in acts of fraudulent concealment. These are actually two separate arguments: (1) that fraudulent concealment by Baniassadi operates as an exception to both the statute of limitations and the statute of repose, and (2) that Baniassadi is equitably estopped from raising a statute of limitations defense.

We first address the fraudulent concealment argument. Section 13-215 of the Code provides that if a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person discovers that he or she has a cause of action. 735 ILCS 5/13-215 (West 2008). Our supreme court has held that in addition to operating as an exception to the statute of limitations, section 13-215, when applicable, is an exception to the statute of repose in legal malpractice actions. *DeLuna*, 223 Ill. 2d at 74.

"As a general matter, one alleging fraudulent concealment must 'show affirmative acts by the fiduciary designed to prevent the discovery of the action.' " *Clay v. Kuhl*, 189 Ill. 2d 603, 613 (2000) (quoting *Hagney v. Lopeman*, 147 Ill. 2d 458, 463 (1992)). However, there is a widely recognized exception to this rule in cases where the existence of a fiduciary relationship is clearly established. *DeLuna*, 223 Ill. 2d at 76 (citing *Crowell v. Bilandic*, 81 Ill. 2d 422, 428 (1980)). "[A] fiduciary who is silent, and thus fails to fulfill his duty to disclose material facts concerning the existence of a cause of action, has fraudulently concealed that action, even without affirmative acts or representations." (Emphasis omitted.) *Id*. at 77. Our supreme court has also recognized that an attorney-client relationship constitutes a fiduciary relationship. *Id*. (and cases cited

13

1-10-0151

therein).

Although it is not necessary to show affirmative acts where a fiduciary relationship has been clearly established, our supreme court has insisted on strict pleading requirements for a plaintiff alleging fraudulent concealment. *Hagney v. Lopeman*, 147 Ill. 2d 458, 463-64 (1992). Specifically, "to excuse diligence in discovering the fraud, the plaintiff must attribute the failure to discover to the trust and confidence placed in the fiduciary." *Id*. at 464. "In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (1996).

In *DeLuna*, the plaintiffs alleged that their attorney failed to reveal pertinent facts, misled them by telling them their case was going well when it had, in fact, been dismissed, and failed to disclose material facts bearing on the procedural status of the case. *DeLuna*, 223 Ill. 2d at 79-80. Moreover, the plaintiffs alleged that they could not speak English and that they relied in good faith on their attorney's reassurances. *Id*. at 80-81. The supreme court held that these allegations were sufficient to meet the pleading requirements for fraudulent concealment. *Id*. at 81.

Here, it is doubtful that Kheirkhahvash's complaint meets the pleading requirements. The complaint does not contain any reference to fraudulent concealment. In her fraud count, Kheirkhahvash focuses on Baniassadi's intentional, knowing, and willful conduct in filing a false application rather than on his representations and assurances to her and her trust in those assurances. Moreover, even if we were to determine that Kheirkhahvash's complaint meets the pleading requirements for fraudulent concealment, it cannot save her legal malpractice action. As

14

noted above, section 13-215 operates as an exception to both the statute of limitations and the statute of repose. Thus, if the statute of repose had already run and Kheirkhahvash successfully pled fraudulent concealment, section 13-215 would give her an additional five years from the time she discovered that she had a cause of action in which to file her complaint. However, it is well settled in Illinois law that if a reasonable amount of time remains in the applicable limitations period when the plaintiff discovers the cause of action, section 13-215 will not extend that period. See, *e.g.*, *Leffler v. Engler, Zoghlin, & Mann, Ltd.*, 157 Ill. App. 3d 718, 721 (1987); *Barratt v. Goldberg*, 296 Ill. App. 3d 252, 258 (1998) (and cases cited therein).

Baniassadi filed the false asylum application on August 1, 2000. Thus, under the statute of repose, Kheirkhahvash's cause of action would extinguish on August 1, 2006. At the very latest, she knew she had a cause of action at the time she retained new counsel and filed a complaint against Baniassadi with the ARDC on November 25, 2003. At that time, almost three years remained under the statute of repose. Moreover, under Kheirkhahvash's argument that the statute of repose did not start to run until Baniassadi withdrew, there would have been six years remaining under the statute of repose. Thus, under both possible dates, a reasonable amount of time remained such that even if Kheirkhahvash successfully pled fraudulent concealment, it would operate only as a possible exception to the statute of limitations and not as an exception to the statute of repose.

Similarly, fraudulent concealment does not save her malpractice action as an exception to the statute of limitations. Assuming, *arguendo*, that Kheirkhahvash's cause of action accrued on April 24, 2002, when the deportation order was entered, her cause of action would have expired

15

on April 24, 2004. She could then argue that when she discovered the fraudulent concealment on November 25, 2003, the amount of time remaining under the statute of limitations was not reasonable. However, even if her complaint sufficiently pled fraudulent concealment and section 13-215 operated as an exception to the statute of limitations, she would only have had 5 years from the time she learned of the cause of action, which would have given her until November 25, 2008. She did not file her complaint until August 21, 2009. Therefore, her complaint was untimely under section 13-215.

We similarly reject Kheirkhahvash's equitable estoppel argument. In order for a plaintiff to invoke estoppel against a statute of limitations defense, "the plaintiff must have relied on acts or representations of the defendant which caused the plaintiff to refrain from filing suit within the applicable statute of limitations." *Leffler*, 157 Ill. App. 3d at 722-23. However, "[t]he doctrine of equitable estoppel will not apply to a case if defendant's conduct terminated within ample time to allow the plaintiff an opportunity to file a cause of action within the limitation period." *Barratt*, 296 Ill. App. 3d at 259. Baniassadi's conduct terminated on November 24, 2003. This is roughly the same time that Kheirkhahvash filed an ARDC complaint against Baniassadi, evidence that she knew or reasonably should have known that her injury was wrongfully caused. She then had two years under the statute of limitations for legal malpractice actions to file her claim and therefore, the doctrine of equitable estoppel does not apply.

As a final matter, we address defendant's request for sanctions under Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). Rule 375(b) provides that if a reviewing court determines that an appeal is frivolous, or that it was not taken in good faith or for an improper purpose, an

appropriate sanction may be imposed upon the party or the attorney of the party. Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). However, as defendant also correctly notes, the imposition of sanctions is a matter left strictly to the appellate court's discretion. *Residential Carpentry, Inc. v. Illinois Workers' Compensation Comm'n*, 389 Ill. App. 3d 975, 976 (2009). We agree that there is little or no merit to this appeal but in the exercise of our discretion, we decline to impose sanctions.

## CONCLUSION

Based on the foregoing analysis, we hold that the trial court did not err in determining as a matter of law that Kheirkhahvash's complaint was time barred. Under the most generous interpretation of the facts, the latest date at which she knew or reasonably should have known of her injury and that it was wrongfully caused is November 25, 2003. Thus, under the statute of limitations for legal malpractice actions, her cause of action expired on November 25, 2005. We further conclude that her claim that her complaint was timely filed under the six-year statute of repose because defendant's continuous negligent actions did not cease until he withdrew as counsel on November 24, 2003, is without merit. A statute of repose does not operate as a statute of limitations and give a plaintiff six years in which to file instead of two after a cause of action accrues. Finally, even if we were to determine that her complaint met the pleading requirements for fraudulent concealment and tolled the statute of limitations, her cause of action would have expired on November 25, 2008. Moreover, equitable estoppel does not apply because defendant's conduct terminated at the time her cause of action accrued, allowing ample time to file her complaint within the two-year statute of limitations.

1-10-0151

Affirmed.

1-10-0151

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each case)

_____

AFROUZ KHEIRKHAHVASH,

        Plaintiff-Appellant,

v.

REZA BANIASSADI,

        Defendant-Appellee.

_____

No. 1-10-0151

Appellate Court of Illinois
First District, Fourth Division

January 13, 2011

_____

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court.

LAVIN and PUCINSKI, JJ., concur.

_____

Appeal from the Circuit Court of Cook County.

Honorable Ronald S. Davis, Judge Presiding.

_____

For APPELLANT, Law Offices of Mary L. Sfasciotti, P.C., Chicago, IL (Mary L. Sfasciotti, of counsel)

For APPELLEE, Joanna C. Fryer, Chicago, IL (Joanna C. Fryer, of counsel)