2020 IL App (2d) 190218-U
No. 2-19-0218
Order filed February 26, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ROBERT STEVENS and JUDITH STEVENS, | ) ) | Appeal from the Circuit Court of McHenry County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 10-LA-162 |
| | ) | |
| WOODFIELD PLANNING | ) | |
| CORPORATION and JAMES DOBBS, | ) | Honorable |
| | ) | Kevin G. Costello, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Birkett and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Summary judgment for president of residential real estate mortgage broker affirmed, as plaintiffs, who were creditors in the broker's bankruptcy, accepted payment from nondebtor president in exchange for release of their claims in the circuit court.

¶ 2    Plaintiffs, Robert Stevens and Judith Stevens, filed suit in the circuit court against defendants, Woodfield Planning Corporation and James Dobbs, its president, officer, and director, for alleged wrongdoing in procuring plaintiffs' mortgage loans.  Woodfield Planning filed for bankruptcy protection, and defendants entered into an agreement with the trustee to release them

from liability for plaintiffs' claims. Plaintiffs did not sign the agreement, but they accepted payment from Dobbs, a nondebtor, in exchange for the release.

¶ 3    Based on the release, the trial court entered summary judgment for Dobbs, and plaintiffs appeal. We conclude that, although Dobbs was a nondebtor in the bankruptcy proceeding and plaintiffs did not sign the agreement, the bankruptcy court was authorized to approve it and plaintiffs accepted payment from Dobbs, releasing him from liability. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5    At all relevant times, Woodfield Planning has been an Illinois licensed real estate mortgage broker, with Dobbs serving as its president, officer, and director. Dobbs was responsible for overseeing the general welfare of the company, and he was also a loan officer who procured loans for his personal clients.

¶ 6    Woodfield Planning also employed Ellen McAlpine as a residential mortgage broker from 1997 through 2011. She never served as an officer or director of Woodfield Planning. Woodfield Planning provided McAlpine with an office, a computer, and a loan processor who helped gather information for loan applications. McAlpine's direct supervisor was Stephanie Radersdorf, the Sr. Vice President of Woodfield Planning.

¶ 7    Plaintiffs are a married couple who obtained several mortgages from Woodfield Planning over 12 years. For each transaction, McAlpine served as their loan officer.

¶ 8    Plaintiffs made an offer to purchase a second residential property in Kissimmee, Florida, and contacted Woodfield Planning to obtain a mortgage. Woodfield Planning helped plaintiffs obtain a loan from First Place Bank, and the closing occurred on September 2, 2005. The loan was "fully documented," which means that plaintiffs provided tax returns, pay stubs, and other financial information as requested by the lender. McAlpine gathered plaintiffs' information and

presented it to First Place Bank for approval. In turn, First Place Bank reviewed the application, underwrote the loan, and determined that plaintiffs qualified for the loan. The loan package was comprised of a "3/1 interest only adjustable rate" first mortgage in the amount of $319,900, and a second mortgage in the amount of $39,991.

¶ 9     On August 30, 2006, First Place Bank sent a letter addressed to Dobbs, demanding that Woodfield Planning purchase plaintiffs' loan because the truth-in-lending (TIL) statement had a technical error. McAlpine contacted plaintiffs regarding the alleged error.

¶ 10    McAlpine claimed that Dobbs was probably unaware of the buy-back demand, because he was not involved in the day-to-day loan operations. McAlpine stated that Radersdorf, not Dobbs, contacted her about the letter. McAlpine stated that Dobbs routinely vacationed during the summer, which suggested to her that he was not in the office when First Place Bank made its buy-back demand in August 2006. Dobbs testified that he did not see the August 30, 2006, letter because he was living on a boat with his family.

¶ 11    On May 1, 2007, plaintiffs refinanced the Florida property by obtaining a new loan from ABN AMRO Mortgage Group, Inc. (ABN). Woodfield Planning again served as plaintiffs' mortgage broker, with McAlpine in the role of loan officer. Like the application for the original loan, the refinance application was fully documented, and ABN made the decision that plaintiffs qualified for the loan. The new loan was a "5/1" interest only loan that would change to a one-year adjustable rate mortgage in 2012. The interest rate was reduced, and the second loan was rolled into the new loan. Dobbs did not participate in the refinance application process.

¶ 12    Dobbs spoke to Robert for the first time on February 26, 2009, which was almost two years after the refinance. Robert requested the meeting to express his dissatisfaction with the new loan and the decline in value of the Florida property. Robert explained that plaintiffs could no longer

afford the loan payments or the homeowners' association fees. Dobbs and McAlpine denied any wrongdoing, pointed out that the refinance resulted in significant cost savings for plaintiffs, and emphasized that plaintiffs entered into the loan agreement willingly and did not attempt to rescind it within three days as allowed by law.

¶ 13    Plaintiffs filed a complaint with the Illinois Department of Financial and Professional Regulations, which dismissed the complaint on jurisdictional grounds because the property was in Florida. Plaintiffs then filed a complaint with the Office of Professional Regulation in Florida. The complaint was dismissed.

¶ 14    Plaintiffs eventually stopped making mortgage payments, they defaulted on the loan, and the property was transferred to the lender in a short sale.

¶ 15    After filing a *pro se* complaint in the circuit court, plaintiffs hired counsel and filed a first amended complaint against Dobbs, McAlpine, and Woodfield Planning on October 28, 2010. Plaintiffs alleged common law fraud and a violation of the Consumer Fraud and Deceptive Practices Act. On August 1, 2011, the trial court dismissed Dobbs and McAlpine from the case individually.

¶ 16    With leave of the trial court, plaintiffs filed a second amended complaint on December 15, 2011, alleging that defendants were negligent, committed common law fraud, and violated the Consumer Fraud Deceptive Practices Act.

¶ 17    On March 4, 2013, defendants moved for partial summary judgment in favor of Dobbs, arguing that the complaint did not allege that Dobbs "actively participated" in the alleged wrongdoing. On November 12, 2013, the trial court granted Dobbs summary judgment.

¶ 18    The matter proceeded until, on August 6, 2015, Woodfield Planning filed for Chapter 7 bankruptcy protection, which stayed the underlying case.  Plaintiffs filed a claim in the bankruptcy proceeding and started negotiating with the trustee and defendants.

¶ 19    On November 18, 2016, the bankruptcy court approved a settlement agreement between the trustee and Dobbs, individually, and Woodfield Planning.  Plaintiffs sent an e-mail objecting to the terms, and they did not sign the agreement.  However, Dobbs, who was not a party to the bankruptcy, agreed to personally pay the trustee $25,000 in exchange for the trustee disbursing the proceeds to plaintiffs.  The agreement provided that Dobbs was making the payment "[i]n full and final settlement of the Claims asserted by the Trustee," and plaintiffs accepted the payment.

¶ 20    After the bankruptcy proceeding concluded, the trial court heard plaintiffs' pending motion to reconsider the November 12, 2013, summary judgment for Dobbs.  On December 10, 2018, the trial court denied reconsideration on the ground that *In re Airadigm Communications, Inc*., 519 F.3d 640, 656 (7th Cir. 2008), authorized the bankruptcy court to enter the agreement releasing Dobbs from liability.  Plaintiffs filed another motion to reconsider, which was denied on March 7, 2019.  In the order, the trial court declared "[t]his case remains dismissed with prejudice against all defendants, including but not limited to [Dobbs], individually."

¶ 21    On March 21, 2019, plaintiffs timely appealed from the following orders:  the summary judgment for Dobbs entered on November 12, 2013; the December 10, 2018, order denying reconsideration of the summary judgment; and the final order on March 7, 2019.

¶ 22                                   II. ANALYSIS

¶ 23    Plaintiffs appeal the orders granting Dobbs summary judgment and effectively dismissing him from their action alleging negligence, common law fraud, and a violation of the Consumer Fraud and Deceptive Practices Act.  The trial court initially granted Dobbs summary judgment

based on his lack of active participation in the loan procurement process. The court reaffirmed the summary judgment based on the bankruptcy settlement, which released Dobbs from liability for plaintiffs' claims in exchange for his $25,000 payment. On appeal, the parties do no address whether summary judgment is precluded by a material question of fact regarding Dobbs' participation in the loan procurements.

¶ 24    Instead, plaintiffs argue that the summary judgment must be reversed because the bankruptcy court's approval of the agreement was not statutorily authorized. Defendants respond that plaintiffs acquiesced to the agreement by accepting the proceeds, thereby releasing Dobbs. We agree with defendants.

¶ 25                                  A. Summary Judgment

¶ 26    Summary judgment is appropriate only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). The purpose of summary judgment is not to try a question of fact but, rather, to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co*., 211 Ill. 2d 32, 42-43 (2004). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adams*, 211 Ill. 2d at 43. If a party moving for summary judgment introduces facts that, if not contradicted, would entitle him to a judgment as a matter of law, the opposing party may not rely on his pleadings alone to raise issues of material fact. *Klitzka v. Hellios*, 348 Ill. App. 3d 594, 597 (2004).

¶ 27    In reviewing a grant of summary judgment, this court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of

the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment is to be encouraged to expedite the disposition of a lawsuit; however, it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. *Springborn v. Village of Sugar Grove*, 2013 IL App (2d) 120861, ¶ 24. We review *de novo* a trial court's grant of summary judgment. *Springborn*, 2013 IL App (2d) 120861, ¶ 24.

¶ 28     The material facts regarding the bankruptcy proceeding are not disputed. Plaintiffs filed a creditor's claim and participated. The trustee met with the parties and suggested that Dobbs, individually, pay $25,000 to settle plaintiffs' claim. After the meeting, plaintiffs objected by e-mail but did not file a formal objection in the proceeding. The agreement expressly mentioned this action and the release of plaintiffs' claim against defendants. Dobbs signed the document twice: individually and as president of Woodfield Planning. The bankruptcy court approved the agreement, and plaintiffs accepted the payment and cashed the check.

¶ 29     Under special circumstances, bankruptcy courts have approved agreements that enjoin a nonconsenting party from making claims against a nondebtor that would undermine the operations of the reorganized entity. Assuming *arguendo* that plaintiffs did not consent to the agreement because they did not sign it and objected informally, the majority view is that the bankruptcy court nevertheless was authorized to approve the agreement releasing Dobbs from liability for plaintiffs' claim, even though he was a nondebtor,

¶ 30     Federal circuit courts are divided over whether a bankruptcy court may issue a nondebtor release and enjoin a nonconsenting party who has participated fully in the bankruptcy proceedings but who has objected to the nondebtor release. *In re Seaside Engineering & Surveying Inc*., 780 F. 3d 1070, 1077 (11th Cir. 2015). The minority view is that nonconsensual, nondebtor releases

are foreclosed by § 524(e) of the Bankruptcy Code, which provides in relevant part that "[the] discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e) (2010).

¶ 31 However, the majority of circuits, including the Seventh Circuit, hold that nondebtor releases or injunctions are permitted, under certain circumstances. *Seaside Engineering*, 780 F. 3d at 1078. In *Seaside Engineering*, the Eleventh Circuit Court of Appeals endorsed the majority view, relying on the wide latitude granted to bankruptcy courts by § 105(a) of the Bankruptcy Code, which provides as follows:

"The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a) (2010).

¶ 32 The Eleventh Circuit explained that § 105(a) authorizes the bankruptcy court to enter the nondebtor release where the settling defendant provides funds for the bankruptcy estate, but would not have entered into the settlement in the absence of such release, and where the bankruptcy court found that the settlement was fair and equitable. *Seaside Engineering*, 780 F. 3d at 1078 (citing *In re Munford*, 97 F. 3d 449 (11th Cir. 1996).

¶ 33 The *Seaside Engineering* court agreed with the Seventh Circuit that " '[t]he natural reading of [§ 524(e)] does not foreclose a third-party release from a creditor's claims.' " *Seaside Engineering*, 780 F. 3d at 1078 (quoting *Airadigm*, 519 F.3d at 656). Pursuant to § 524(e), the discharge of the debtor's debt does not itself affect the liability of a third party, but § 524(e) says

nothing about the authority of the bankruptcy court under § 105(a) to release a nondebtor from a creditor's claims. *Seaside Engineering*, 780 F. 3d at 1078. "As the *Airadigm* court noted, if Congress had meant to limit the powers of bankruptcy courts, it would have done so clearly, as it did in other instances, or it would have done so by creating requirements for plan confirmation as in section [§ 1129(a)]." *Seaside Engineering*, 780 F. 3d at 1078 (citing 11 U.S.C. § 1129(a) ("The court shall confirm a plan only if the following requirements are met ***")).

¶ 34    In agreement with *Airadigm*, *Seaside Engineering*, and *Munford* we reject the minority position that § 524(e) bars nonconsensual, nondebtor releases. Although the statute provides that "discharge of a debt of the debtor does not affect the liability of another entity on *** such debt," it does not expressly preclude the approval of a settlement agreement that does so. We agree with the view that such agreements are authorized by § 105(a), which codifies the established law that a bankruptcy court " 'applies the principles and rules of equity jurisprudence.' " *Seaside Engineering*, 780 F. 3d at 1078 (quoting *Airadigm*, 519 F. 3d at 657 (quoting *Pepper v. Litton*, 308 U.S. 295, 304 (1939))).

¶ 35    However, we also adhere to the corollary that nondebtor releases should be reserved for those unusual cases where enjoining claims against a nondebtor is necessary for the success of the debtor, and only in situations in which such an order is fair and equitable under all the facts and circumstances. See *Seaside Engineering*, 780 F. 3d at 1079.

¶ 36    A seven-factor test guides a bankruptcy court when deciding whether a nondebtor release from a creditor's claim is appropriate:

> " '[W]hen the following seven factors are present, the bankruptcy court may enjoin a non-consenting creditor's claims against a non-debtor: (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit

against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions.' " *Seaside Engineering*, 780 F. 3d at 1079 (quoting *In re Dow Corning Corp.*, 280 F. 3d 648, 658 (6th Cir. 2002)).

¶ 37    Bankruptcy courts should have discretion to determine which of the *Dow Corning* factors are relevant in each case. *Seaside Engineering*, 780 F. 3d at 1079 (citing *Behrmann v. National Heritage Foundation*, 663 F. 3d 704, 712 (4th Cir. 2011)). The factors should be considered a nonexclusive list of considerations to be applied flexibly, always mindful that nondebtor releases should be used "cautiously and infrequently" (*Behrmann*, 663 F. 3d at 712)) and only where essential, fair, and equitable (*Munford*, 97 F. 3d at 455). *Seaside Engineering*, 780 F. 3d at 1079.

¶ 38    In this case, there was an identity of interest between Woodfield Planning and Dobbs such that plaintiffs' suit against one essentially was a suit against the other. The agreement provided a mechanism to pay plaintiffs, who were effectively enjoined by the release.

¶ 39    Plaintiffs were parties to the settlement negotiation, and despite their objection by e-mail, they did not file a formal objection in the bankruptcy proceeding. Despite their mild protestations, plaintiffs accepted the $25,000 payment from Dobbs and cashed the check. Dobbs provided these

funds on behalf of the bankruptcy estate and joined as a party to the agreement in exchange for the release from liability for plaintiffs' claims in this action. The release was fair and equitable, as shown by plaintiffs' acceptance of the payment. Under these unusual circumstances, plaintiffs were bound by the agreement releasing defendants from liability.

¶ 40    Plaintiffs assert that, to the extent that *Airadigm* and cases like it permit nondebtor releases, such agreements are appropriate in Chapter 11 bankruptcies only. Plaintiffs conclude that the summary judgment for Dobbs is not supported by the agreement, because Woodfield Planning's bankruptcy was filed under Chapter 7. Plaintiffs have not adequately articulated a basis for distinguishing filings under the two chapters.

¶ 41    Although *Airadigm*, *Seaside Engineering*, and *Munford* involved Chapter 11 bankruptcies, plaintiffs cite no authority for the proposition that a nonconsensual release of a nondebtor may not be entered in a bankruptcy filed under Chapter 7. The pro-release and anti-release theories discussed in these cases are based on § 105(a) and § 524(e), respectively, not on any section of Chapter 11. Plaintiffs do not explain how these sections apply differently to Chapter 7 filings, or why the principles and rules of equity jurisprudence, codified in § 105(a), must be curtailed in such filings. See *Seaside Engineering*, 780 F. 3d at 1078 (quoting *Airadigm*, 519 F. 3d at 657 (quoting *Litton*, 308 U.S. 295 at 304)).

¶ 42    Construing the pleadings, depositions, admissions, and affidavits strictly against Dobbs and liberally in favor of plaintiffs, we conclude that there is no genuine issue as to any material fact and that Dobbs was entitled to judgment as a matter of law. See *Williams*, 228 Ill. 2d at 417; see also 735 ILCS 5/2-1005(c) (West 2018). Reasonable persons would not draw different inferences from the undisputed facts about whether the agreement is fair and reasonable. See *Adams*, 211 Ill. 2d at 43.

¶ 43                                            B. Sanctions

¶ 44    Finally, defendants argue that we should impose sanctions on plaintiffs for filing a frivolous appeal. Defendants assert that Dobbs was not actively involved in procuring plaintiffs' loans, and therefore, plaintiffs engaged in bad faith by pursuing their claims against him for nine years.

¶ 45    Supreme Court Rule 375(b) authorizes sanctions for appeals that are frivolous, not taken in good faith, or for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). A reviewing court applies an objective standard to determine whether an appeal is frivolous; "the appeal is considered frivolous if it would not have been brought in good faith by a reasonable, prudent attorney." *Dreisilker Electric Motors, Inc. v. Rainbow Electric Co.*, 203 Ill. App. 3d 304, 312 (1990). The imposition of Rule 375 sanctions is left entirely to the discretion of the reviewing court. *Kheirkhahvash v. Baniassadi*, 407 Ill.App.3d 171, 182 (2011).

¶ 46    Plaintiffs' arguments ultimately lack merit, but the appeal is not frivolous. Plaintiffs initially filed claims with agencies in Illinois and Florida, which prolonged the dispute without affording plaintiffs relief. A stay in the ensuing litigation was triggered by the bankruptcy proceedings, which further delayed the outcome. Under these circumstances, we disagree with defendants that this appeal is one that would not be brought in good faith by a reasonable and prudent attorney.

¶ 47                                          III. CONCLUSION

¶ 48    For the reasons stated, we affirm the summary judgment entered for Dobbs and deny defendants' request for Rule 375(b) sanctions.

¶ 49    Affirmed.